UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: **19 MJ03005** |
| v. | VIO: 18 U.S.C. § 371 |
| D-1 SUNG YOL "DAVID" KIM, | 18 U.S.C. § 201 |
| | 18 U.S.C. § 2 |
| Defendant. _____/ | **UNDER SEAL** |

## INDICTMENT

THE GRAND JURY CHARGES:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.  Defendant SUNG YOL "DAVID" KIM ("KIM"), a citizen of the Republic of Korea ("ROK"), was the owner and Chief Executive Officer of DK Marine Service Co., Ltd. ("DK Marine"), a ROK-based company.

2.  DK Marine was a husbanding services provider ("HSP"), which contracted with the U.S. Navy to provide items and services for U.S. Navy vessels when they arrived in port. Items and services coordinated, scheduled, and/or procured by DK Marine included fuel, food and other supplies, trash collection, transportation, security, tugboats, and other logistical services.

3.  From in or about September 2011 until in or about May 2014, James Russell Driver III ("Driver") was a civilian U.S. federal employee with the U.S. Navy's Military

1

Sealift Command ("MSC") who served as the captain/master of the USNS Charles Drew ("Drew"), a U.S. Navy cargo ship operating in the Pacific region. MSC is a component of the U.S. Navy and is the organization that controls the replenishment and military transport ships of the U.S. Navy. As the captain of the Drew, Driver was a "public official" within the definition of Title 18, United States Code, Section 201(a)(1).

4. From in or about August 2006 to in or about August 2014, Co-Conspirator 1 ("CC-1") was the Director of Operations at the MSC Office in Busan, ROK. As Director of Operations, CC-1 was responsible for directing all aspects of MSC ships' arrival, logistics support, and departure from port. In order for a U.S. Navy ship to acquire goods and services, internal paperwork known as a logistics requisition ("LOGREQ") needed to be transmitted from the vessel to certain administrative offices, including through the appropriate contracting process with the U.S. Navy's Fleet Logistics Center in Yokosuka, Japan. Fleet Logistics Centers were previously known as Fleet and Industrial Supply Centers ("FISCs").

5. KIM and Driver became acquainted in or about August 2013 when DK Marine provided husbanding services for the Drew. Driver and CC-1 were acquainted professionally due to their respective positions.

6. On or about October 4, 2013, Company 1, another ROK-based HSP company, was awarded the U.S. Navy's HSP regional contract covering countries including ROK. According to relevant procedures, as the regional contract holder, Company 1 was therefore the default HSP for port visits in ROK.

7.      The Drew was scheduled to make a port visit in Chinhae, ROK in late December 2013.

8.      It was a violation of Driver's official and lawful duties: (a) to transmit information that the U.S. Navy had classified as "confidential" to any person not entitled to receive it; (b) to make unauthorized disclosure of proprietary, internal U.S. Navy information; and (c) to enrich himself by using his position and influence with the U.S. Navy to advocate for and advance the interests of DK Marine and KIM.

## COUNT ONE
**Conspiracy**
(Violation of 18 U.S.C. § 371)

9.      Paragraphs 1 through 8 of the Indictment are realleged and incorporated by reference as if fully set forth herein.

10.     From in or about November 2013 through in or about January 2014, outside the jurisdiction of any particular judicial district, defendant SUNG YOL "DAVID" KIM, Driver, and others (1) knowingly and unlawfully combined, conspired, and agreed to commit bribery, that is, KIM, Driver, and others knowingly agreed that, in return for Driver's being influenced in the performance of official acts and being induced to do and omit to do acts in violation of his official and lawful duties, as opportunities arose, (a) KIM would directly and indirectly corruptly give, offer, and promise things of value to Driver, including travel expenses, gifts, and a job offer after Driver's retirement from federal employment, and (b) Driver would directly and indirectly corruptly demand, seek, receive, accept, and agree to receive and accept these things of value; and (2) Driver and KIM took

3

overt acts in furtherance of this conspiracy and to effect its unlawful object, in violation of Title 18, United States Code, Sections 201(b)(1)(A) and (C) and 201(b)(2)(A) and (C).

### Object of the Conspiracy

11. It was the object of the conspiracy for Driver to provide KIM with confidential and other proprietary, internal U.S. Navy information, and to use his position and influence with the U.S. Navy to advocate for and advance the interests of KIM and DK Marine, as opportunities arose, and in return for KIM, DK Marine, and others to give things of value to or on behalf of DRIVER, including travel expenses, gifts, and a job offer.

### Manner and Means

12. In furtherance of this conspiracy, and to accomplish its object, the following manner and means were used, among others:

    a. Driver would demand, seek, receive, and accept things of value from KIM, including travel expenses, gifts, and a job offer after Driver's retirement from federal service.

    b. KIM would offer and give things of value to or on behalf of Driver, including travel expenses and gifts.

    c. In return for these things of value, Driver would provide KIM with confidential and other proprietary, internal U.S. Navy information, and would use his position and influence with the U.S. Navy to advocate for and advance the interests of KIM and DK Marine, as opportunities arose.

    d. Driver would attempt to conceal his corrupt relationship with KIM by communicating with KIM through Driver's personal email address, assigning

misleading file names to confidential and other proprietary, internal U.S. Navy information sent electronically to KIM, and deleting emails between himself and KIM.

 e. KIM would direct Driver to circumvent prescribed U.S. Navy procedures for obtaining husbanding services, including delaying submission of the LOGREQ.

### Overt Acts

13. In furtherance of the conspiracy, and to effect its objects, the following overt acts, among others, were committed:

 a. In or about October 2013, KIM paid for or otherwise provided DRIVER with high speed train tickets in connection with a visit by Driver to Individual A[1] in a hospital in ROK.

 b. On or about November 10, 2013, KIM emailed Driver at his personal email account requesting that Driver send the LOGREQ for the Drew's upcoming late December port visit to CC-1: "[p]lease send the X mas LQ card at the last minute to [CC-1's first initial]. So that he can deliver the support."

 c. On or about November 10, 2013, Driver, using his personal email account, sent an email to KIM with the subject line "Hospital Pictures [Individual A] :-)" that attached two files: DSCF2095b.JPG was a photograph of three people in a hospital room, two of whom are Driver and Individual A. The second file, a

---

[1] Individual A was a Korean sailor who was accidentally injured when the Drew met up with the ROK navy ship on which she was stationed in order to refuel the ROK ship.

PDF labeled "Hospital Group Photo," was not a photograph, but a three-page account statement, including pricing for husbanding supplies and services, from DK Marine competitor Company 2 to the Drew for a prior port visit. The body of the email said "Copy and delete. Thanks!"

d.  On or about November 10, 2013, in response to the email in subparagraph (c) above, KIM directed: "Thanks. When submitting log reg. Do no Cc fisc. Only [CC-1's first initial] and your other msc reps. You know what I mean. Then [CC-1's first initial] will handle the rest."

e.  On or about November 25, 2013, KIM emailed Driver at his personal email account: "Just quick reminder, please send the packet 3 days prior to your arrival and everything will be handled accordingly."

f.  On or about November 25, 2013, Driver, using his personal email account, emailed KIM stating: "Copy. However, may get 'egged' to submit earlier ... the minimum requirement is 10 days ... will likely be somewhere between 14 and 15 as 17 would be too close to go unnoticed. Would like to know [CC-1's first initial] take on this if you can find out" (ellipses in original). Minutes later, KIM replied via email: "He want u to send in as late as possible."

g.  On or about November 25, 2013, Driver, using his personal email account, emailed KIM: "Glad you like the pictures. Hope to get more as [Individual A] probably will remain hospitalized for another 4-5 months. I was hoping to visit her over the holidays, roughly arriving 20 Dec thru 07 Jan. If we could work out some arrangement, would love to have my family visit Korea some day. I think 7

6

to 10 days would be the extent of their stay. Working on some other ideas for possible retirement next year." Prior to this email, KIM had informed Driver in conversation that CC-1 would take a job with KIM following CC-1's retirement from federal service in 2014. Driver referenced retirement in the November 25, 2013 email in order to raise the subject of KIM's offering Driver a job.

h.  Minutes after the email referenced above in subparagraph (g) was sent, KIM replied via email: "No problem. I'll take care of the rest. Just concentrate on the 17th."

i.  On or about December 13, 2013, KIM emailed Driver at his personal email account: "Everything is on track here. After long talk and thinking with [CC-1 initial-based nickname]. It's best that ur son [sic] send the package to my company and Cc [CC-1 initial-based nickname]. Plz send the package in on the 19th or 20th and will have everything already ready for you."

j.  On or about December 13, 2013, KIM emailed Driver at his personal email account: "Important note. Don't send the package to other friends. Just to my company and [CC-1 initial-based nickname]."

k.  On or about December 17, 2013, Driver, using his personal email account, emailed KIM with the subject "SAIPAN Visitor Info." The attached file, entitled "Saipan Visitor Info," was the LOGREQ for the Drew's upcoming port visit in Chinhae, ROK.

l.  On or about December 17, 2013, Driver, using his personal email account, emailed KIM with the subject "Family Pictures": "Arrive: PM 21 Dec[.]

Depart: PM 03 Jan[.] Asiana or KAL is fine … I had trouble with Saipan Family Pic … UAC is self explanatory" (ellipses in original). Attached to the email were passport photographs of Driver's wife and minor child; files entitled "[Individual A] Progress Report.jpg" and "Saipan Family Pic Dec 2013.jpg" that contained HSP pricing information for Company 1 and Company 3; and a U.S. Navy guidance cable pertaining to unauthorized commitment ("UAC") policy for HSP contracting.

  m. On or about December 21, 2013, CC-1, KIM, and a representative of Company 1 met the Drew when it arrived in port at Chinhae, ROK. Over the objections of the Company 1 representative, Driver chose to have KIM and DK Marine provide husbanding services for the Drew's visit.

  n. On or about December 21, 2013, Driver, using his U.S. Navy email account, emailed CC-1 at his U.S. Navy account, other Navy employees, and a representative of Company 1 about the Chinhae HSP situation. In the email, Driver claimed that he "was unaware of any formal HSP contract agreements with [Company 1] . . . and understood [DK Marine] would be the HSP here at Chinhae." Driver further falsely claimed in the email that a shipboard communications outage had prevented the timely transmission of the LOGREQ, and when he realized the problem, on or about December 20, Driver inadvertently called KIM instead of CC-1 and proceeded to make HSP arrangements with KIM because "this was an emergent issue."

  o. In or about late December 2013, while Driver's wife and child were in ROK with him, KIM met up with the Driver family and purchased at a store an

iPad for Driver's child and a cellphone case for Driver's wife. During that outing, KIM told Driver's wife that he was looking to expand his business in Asia and would be in need of new employees with regional experience if he were successful.

p.  In or about late December 2013 or early January 2014, KIM paid for or caused to be settled the Driver family's hotel bill while Driver's wife and child were visiting Driver in ROK.

q.  On or about January 19, 2014, Driver, using his personal email account, emailed KIM with the subject line "[Individual A] Pro." In the body of the email, Driver wrote "Attached files pertain." The attachments included a U.S. Navy contract with Company 2; three confidential U.S. Navy guidance cables from Washington, D.C. to ships including the Drew pertaining to HSP contracting policy; and pricing information for Company 1 and Company 4. None of the attachments involved Individual A. Later than day, KIM replied: "Thanks. Very Helpful."

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
**Bribery**
(Violation of 18 U.S.C. § 201)

14.  Paragraphs 1–9 and 11–13 of the Indictment are realleged and incorporated by reference as if fully set forth herein.

15.  Between in or about November 2013 and January 2014, outside the jurisdiction of any particular judicial district, defendant SUNG YOL "DAVID" KIM, directly and indirectly, corruptly gave, offered or promised things of value, including travel expenses, gifts, and a job offer, to Driver, a public official, with intent to influence Driver

in the performance of official acts and to induce Driver to do and omit to do things in violation of his official duties, all as opportunities arose, including providing confidential and other proprietary, internal U.S. Navy information to KIM, and using Driver's position and influence within the U.S. Navy to advocate for and advance the interests of KIM and DK Marine.

All in violation of Title 18, United States Code, Sections 201(b)(1)(A) and (C) and 2.

## FORFEITURE ALLEGATIONS

16.     Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on either of Counts One or Two of this Indictment.

17.     Upon conviction of either of the offenses set forth in Counts One or Two of this Indictment, the defendant, SUNG YOL "DAVID" KIM, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses. Such forfeitable property includes a sum of money equal to the amount of proceeds obtained as a result of the offenses.

18.     If any of the property described above, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

THIS IS A TRUE BILL.

Dated: January 17, 2019      */s/ Foreperson of the Grand Jury*
                                          FOREPERSON OF THE GRAND JURY

MATTHEW SCHNEIDER
United States Attorney
Eastern District of Michigan

ROBERT ZINK
Acting Chief
Fraud Section, Criminal Division
U.S. Department of Justice

*/s/ Jessee C. Alexander-Hoeppner*
JESSEE C. ALEXANDER-HOEPPNER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice